Argued and submitted February 8, 2013, affirmed February 26, 2014

Lupe WILSON
and Aurora Gutierrez,
*Plaintiffs-Appellants,*

*v.*

Francisco GUTIERREZ, Jr.,
*Defendant-Respondent.*

Linn County Circuit Court
CE07361; A146521

323 P3d 974

Marianne Dugan argued the cause and filed the brief for appellants.

No appearance for respondent.

Before Duncan, Presiding Judge, and Wollheim, Judge, and Schuman, Senior Judge.

WOLLHEIM, J.

## WOLLHEIM, J.

Plaintiffs appeal from a judgment in this forcible entry and wrongful detainer (FED) action, in which the trial court awarded plaintiffs possession of the residential real property in dispute but also awarded defendant $30,000 on his counterclaim for unjust enrichment. Plaintiffs assign error to the trial court's ruling on the unjust enrichment counterclaim, arguing that there was insufficient evidence in the record to support defendant's counterclaim and no evidentiary basis for the amount of damages awarded. Defendant did not file an answering brief.[1] For the reasons that follow, we affirm.

Unjust enrichment is an equitable doctrine. *Speciality Risk Services v. Royal Indemnity Co.*, 213 Or App 620, 625, 164 P3d 300 (2007). We have discretion to review equitable cases *de novo*, but we only do so in exceptional cases. ORS 19.415(3)(b); ORAP 5.40(8)(c). It is not clear whether plaintiffs request *de novo* review. Regardless, this is not an exceptional case where we would exercise our discretion to review the record *de novo*. "We therefore review the trial court's legal conclusions for errors of law and are bound by the trial court's factual findings if they are supported by any evidence in the record." *Emerson v. Kusano*, 260 Or App 577, 581, 320 P3d 610 (2014). "[W]e view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013) (applying our general standard of review of factual findings in the context of a juvenile dependency case).

We summarize the relevant facts from the trial court's findings and the record. Plaintiffs are defendant's mother, Aurora Gutierrez (mother), and defendant's sister, Lupe Wilson (Wilson), who had power of attorney for mother. Mother, 83 years old at the time of trial, owned two houses, one in Sweet Home, where she resided, and one in Albany,

---

[1] Defendant filed a notice of cross-appeal, but that cross-appeal was dismissed because defendant failed to file an undertaking for costs on appeal. ORS 19.300; ORAP 7.40.

which she purchased in the 1960s with her husband for use as a rental property. Defendant began living in the Albany house around 1990 with his understanding that, in lieu of paying rent, he would pay for the utilities, insurance, and property taxes on the house, and provide financial support as needed to his parents, and that, in exchange, mother would give him the deed to the house after defendant's father died. Plaintiffs disputed that there was any such arrangement. It is undisputed that defendant made house-related payments and other payments to mother between 1997 and 2006, but that, as of July 2007, mother owed unpaid property taxes of $7,252. To pay the deficient property taxes, mother cosigned with defendant for a loan, using her Sweet Home house as collateral. Because mother did not have a checking account, the proceeds of the loan were deposited into defendant's checking account. Subsequently, some of the payments that defendant made to mother and on her behalf came from those loan proceeds.

Mother became concerned about her financial situation and the risk of foreclosure on her Sweet Home house, and she decided to sell the Albany property. Wilson helped mother prepare and serve a notice on defendant on June 8, 2007, terminating his tenancy on July 14, 2007. Defendant did not leave the Albany property, and plaintiffs brought this FED proceeding on July 18, 2007.

In response to the FED claim, defendant alleged three counterclaims: unjust enrichment, specific performance of an oral contract, and constructive trust. As relevant to this appeal, defendant alleged in his unjust enrichment counterclaim that his parents "received benefits by substantial payments from Defendant, intended to provide support and payment for them and her in exchange for the property which should have been deeded to the Defendant." Defendant alleged further that his parents "were each aware of those benefits received, and it would be inequitable and an unjust enrichment of [mother] if [mother] does not fulfill her obligation to provide the deed to the property, or to retain those benefits as proven at trial for up to $100,000 prior to [the death of defendant's father], and separately, up to $90,000 after [his father's] death."

At trial, defendant argued that, even if he did not establish the existence of the oral agreement to convey the property, he had paid his parents' bills for more than a decade in reliance on his understanding that mother had agreed to deed him the house, and it would be unjust to allow mother to keep the benefits of those expenditures and also evict him from the house. Defendant submitted Exhibit 119, which he contended established that he had paid more than $150,000 on behalf of mother. Plaintiffs reviewed that exhibit and disputed that defendant paid many of those expenses on behalf of mother. But plaintiffs' response to Exhibit 119 conceded that defendant had made some payments on behalf of his mother. Plaintiffs argued that defendant's unjust enrichment counterclaim should fail because there was no enforceable agreement to deed the Albany house, and all of defendant's payments to mother were either in exchange for the benefit of living at the Albany house or gratuitous financial support of his parents in the context of a family relationship.

After a lengthy trial, the court issued a letter opinion. On plaintiff's FED claim, the trial court determined that defendant was a tenant at sufferance, and that plaintiffs were entitled to possession of the Albany house. The court found that there was no agreement on the terms of the tenancy and no agreement to deed the house to defendant in exchange for his payments. The trial court rejected defendant's counterclaims for specific performance and the establishment of a constructive trust, but ruled in favor of defendant on his unjust enrichment counterclaim, stating "[t]here is no question based on the testimony and evidence presented that Defendant provided money to both of his parents and that he paid certain bills and expenses for his Mother after his Father died."

The trial court acknowledged in its letter opinion that, based on the parties' testimony, the source and amount of defendant's expenditures on mother's behalf were uncertain. However, the court found, based on credible testimony by other witnesses, that defendant had given mother money for gambling and expenses. The court also found, based on defendant's Exhibit 119 and plaintiffs' responses to that exhibit, that defendant had made many payments to mother

that plaintiffs did not contest, which "clearly appear not to be gifts," but, rather, were funds that mother expected defendant to provide to her when needed. Given those findings, and taking into account all other evidence received, the court concluded that defendant had partially prevailed in his unjust enrichment counterclaim. The court awarded defendant $30,000 on his unjust enrichment counterclaim and determined that defendant was entitled to the return of the $2,100 that he had paid into the court for rent.

On appeal, plaintiffs argue that defendant presented no evidence of the value of any alleged benefit to mother from defendant's expenditures or from his improvements to the house, particularly in light of the benefit that defendant received from living there rent free. Plaintiffs contend, further, that defendant did not show that it would be unjust for plaintiffs to keep amounts that he did provide, because the rental value of the house exceeded defendant's payments. Moreover, plaintiffs assert that, even if defendant paid more in support of his parents than the rental value of the house, there was no basis for the trial court to find that those payments were not a gift in the context of a family relationship. In plaintiffs' view, the trial court's findings that defendant was not credible, that his failure to pay property taxes caused a lien to be placed on the Albany house, that he used mother's loan proceeds to pay some of her expenses, and that he did not prove that his improvements and tax payments event partially offset the rental value of the house are inconsistent with its determination that defendant met his burden of proof for an unjust enrichment claim.

"The elements of the quasi-contractual claim of unjust enrichment are (1) a benefit conferred, (2) awareness by the recipient that she has received the benefit, and (3) it would be unjust to allow the recipient to retain the benefit without requiring her to pay for it." *Cron v. Zimmer*, 255 Or App 114, 130, 296 P3d 567 (2013). The first two elements are questions of historical fact, which we review for legally sufficient evidence to support them. The third element presents a question of law, which we review for legal error. In the context of an unjust enrichment claim, the Oregon Supreme Court has defined a "benefit" broadly, citing the *Restatement*

*of Restitution* § 1 (1937). *Farmer v. Groves*, 276 Or 563, 568, 555 P2d 1252 (1976). Comment b to § 1 of the Restatement explains:

> "A person confers a benefit upon another if [the person] gives to the other possession of or some other interest in money, land, chattels, or choses in action, performs services beneficial to or at the request of the other, satisfies a debt or a duty of the other, or in any way adds to the other's security or advantage. [The person] confers a benefit not only where [the person] adds to the property of another, but also where [the person] saves the other from expense or loss. The word 'benefit,' therefore, denotes any form of advantage."

We begin with the sufficiency of evidence to support the facts as found by the trial court. There is evidence in the record sufficient to support the trial court's finding that defendant conferred a benefit on mother when he gave her money, not intended as a gift, that she expected and used for gambling and expenses. The evidence also supports the trial court's finding that mother was aware that she received the benefit—she did not contest that defendant made some payments on her behalf. The remaining question concerns whether the trial court erred as a matter of law in determining that it would be unjust to allow mother to retain the benefit without requiring her to pay for it.

The mere fact that a benefit is conferred is not sufficient to establish unjust enrichment. *Tum-A-Lum Lumber v. Patrick*, 95 Or App 719, 721, 770 P2d 964 (1989). "For an injustice to be found, one of three things must be true: '(1) the plaintiff had a reasonable expectation of payment; (2) the defendant should reasonably have expected to pay; or (3) society's reasonable expectations of security of person and property would be defeated by non-payment.' 1 Corbin, *Contracts* § 19A (Supp 1992)." *Jaqua v. Nike, Inc.*, 125 Or App 294, 298, 865 P2d 442 (1993). Those are questions of law that depend on underlying factual determinations. *See Cron*, 255 Or App at 130 (reviewing third element of unjust enrichment claim for sufficient evidence to allow a factfinder to find that it would be unjust to allow the defendant to retain the benefit conferred); *Yanney v. Koehler*, 147 Or App 269, 279, 935 P2d 1235 (1997) (affirming the trial

court's conclusion that the plaintiffs failed to state a claim for unjust enrichment when they failed to allege facts sufficient to show that it would be unjust for the defendants to retain benefits received). In the context of defendant's counterclaim, the first factor concerns whether the evidence is sufficient to support the conclusion that defendant had a reasonable expectation of payment; the second factor concerns whether the evidence is sufficient to support the conclusion that mother reasonably expected to pay for the benefit received.

The trial court concluded that, although defendant's payments for property taxes and improvements did not "even partially offset [the] huge benefit to him" of free residence, defendant had a reasonable expectation of payment based on credible testimony that he gave mother money for gambling and expenses, uncontested documentation that defendant's payments on his parents' behalf were not intended as a gift, and evidence that mother expected defendant to provide funds to her when needed. We conclude that the record contains evidence to support those factual findings and that those findings are legally sufficient to support the trial court's conclusion that it would be unjust to allow plaintiffs to retain the benefit of defendant's payments without compensation.

Plaintiffs also argue that, even if the trial court correctly ruled in defendant's favor on the unjust enrichment counterclaim, it erred in awarding damages in the amount of $30,000, because there was no evidentiary basis for that amount, and the court did not account for the benefit to defendant of free rent. Plaintiffs assert that the trial court determined that $700 per month was a reasonable rent for the Albany house at the time of litigation. Because this case was in litigation for three years, plaintiffs contend that they were entitled to a $25,200 offset against the $30,000 unjust enrichment award.

"Restitution is based on the theory that one party should not be unjustly enriched at the expense of another." *Farmer*, 276 Or at 568. In determining the amount of unjust enrichment, "doubts are resolved in favor of * * * the injured party." *Hughes v. Bembry*, 256 Or 172, 177, 470 P2d 151

(1970) (internal quotation marks omitted). The trial court did not accept either plaintiffs' or defendant's version of their arrangement. As noted above, plaintiffs asserted that, in exchange for the right to live in the Albany house rent free, defendant agreed to pay all property taxes, insurance, and utilities on the property, and that defendant's additional financial support to his parents was gratuitous. Defendant asserted that he agreed to make those house-related payments and to support his parents financially in exchange for mother's agreement to deed the Albany property to him. The trial court did not find plaintiffs or defendant completely credible.[2] It rejected plaintiffs' contention that defendant gratuitously paid his parents' expenses without expectation of reimbursement. But it also rejected defendant's contention that he had been promised a deed to the house or that he had paid mother more than $150,000. Rather, the court found that the arrangement and financial outcome was something in the middle. After considering the amount of defendant's payments on mother's behalf and the rental value of the Albany house, the court determined that defendant was not entitled to be compensated for all of his payments on mother's behalf, but that $30,000 would reasonably compensate defendant for the amount by which his mother had been unjustly enriched. Having reviewed the record, we conclude that it contains legally sufficient evidence to support the trial court's determination that $30,000 was a just and reasonable award.

Affirmed.

---

[2] As noted above, Wilson participated only by having power of attorney for mother.